[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-16217
_____

D.C. Docket No. 1:11-cv-00784-ODE

BARBARA J. FULLER,
and all others similarly situated,

Plaintiff-Appellant,

SELETHIA PRUITT, et al.,

Plaintiffs,

versus

SUNTRUST BANKS, INC.,
THE SUNTRUST BANKS, INC. BENEFITS PLAN COMMITTEE,
JORGE ARRIETA,
HAROLD BITLER,
MIMI BREEDEN, et al.,

Defendants-Appellees,

TRUSCO CAPITAL MANAGEMENT, INC., et al.,

Defendants.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(February 26, 2014)

Before HULL and HILL, Circuit Judges, and MOTZ,[*] District Judge.

HULL, Circuit Judge:

Plaintiff Barbara Fuller ("Fuller") appeals the Rule 12(b)(1) dismissal of her

putative class action complaint brought pursuant to the Employee Retirement

Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq.

After careful review and with the benefit of oral argument, we affirm the

district court's dismissal of Fuller's complaint.[1]

## I. BACKGROUND

### A.    Fuller's Employment with SunTrust

For 38 years, from 1967 to 2005, Plaintiff Fuller worked in various clerical

positions for the Defendant SunTrust Banks, Inc. ("SunTrust"), a large commercial

bank, which provides deposit, credit, trust, and investment services.

---

[*]Honorable J. Frederick Motz, United States District Judge for the District of Maryland, sitting by designation.

[1]We review de novo the district court's grant of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff. Lanfear v. Home Depot, Inc., 679 F.3d 1267, 1275 (11th Cir. 2012) (ERISA case).

At some point, SunTrust established a defined contribution employee benefit 401(k) Plan ("the Plan") in which Fuller participated.  SunTrust was the sponsor of the Plan and one of the Plan's named fiduciaries.[2]  Each Plan participant, like Fuller, had her own account and could contribute eligible wages to that account on a pre-tax basis.

The Plan offered a variety of investment vehicles in which each participant, like Fuller, could choose to invest her 401(k) account's assets.  A participant selected her own investments and thereby directed how her contributions were invested.  The Plan participants bore the risk of poor performance of the Plan's investments or investment losses.

In late 2005, Fuller ended her employment, and on October 12, 2005, Fuller was distributed the entire investment in her 401(k) account.

## B.    Amended Complaint

More than five years later, on March 11, 2011, Plaintiff Fuller filed a putative class-action complaint alleging various ERISA violations by the following Defendant fiduciaries: (1) SunTrust; (2) SunTrust's Benefits Plan Committee;

---

[2]Under ERISA, every employee benefit plan must provide for one or more named fiduciaries that jointly or severally possess the authority to control and manage the operation and administration of the plan.  ERISA § 3(a)(1), 29 U.S.C. § 1102(a)(1).

3

(3) previous Plan Committee members;[3] and (4) previous Chairs of SunTrust's Compensation Committee[4] (collectively "Defendants").  On June 6, 2011, Fuller amended her complaint (the "complaint").

Fuller's lawsuit involves her claims that Defendant SunTrust and related co-defendants breached their ERISA-imposed fiduciary duties of loyalty and prudence to the Plan participants.  According to the complaint, Defendant SunTrust and the co-defendants breached these duties by selecting and adding these investment options in the Plan menu—specifically proprietary mutual funds of SunTrust that performed poorly and had high fees benefiting SunTrust, rather than the Plan participants.

While SunTrust was the Plan sponsor, SunTrust's Benefits Plan Committee ("Plan Committee") was the Plan administrator and a named fiduciary of the Plan. The Plan Committee had the "authority, discretion, and responsibility to select, monitor, and remove or replace" the Plan's investment funds.  Plan Committee members met four or more times a year and reviewed the performance of the Plan's investment funds.  The Chair of SunTrust's Compensation Committee was

---

[3]The previous Benefits Plan Committee members named as Defendants are (1) Jorge Arrieta,  (2) Harold Bitler, (3) Mimi Breeden, (4) Mark Chancy, (5) David Dierker, (6) Ted Hoepner, (7) Ken Houghton, (8) Thomas Kuntz, (9) Donna Lange, (10) Jerome Lienhard, (11) Gregory Miller, (12) William O'Halloran, (13) Thomas Panther, (14) William H. Rogers, Jr., (15) Christopher Shults, (16) John Spiegel, and (17) Mary Steele.

[4]The previous Chairs of the Compensation Committee named as Defendants are (1) Joseph L. Lanier, Jr., (2) Larry L. Prince, and (3) Alston D. Corell.

4

also a named fiduciary of the Plan and was responsible for appointing and monitoring the Plan Committee members.

Beginning in 1997, the Plan Committee began to add proprietary mutual funds to the Plan's investment options. These proprietary mutual funds were funds that SunTrust's subsidiaries offered and managed, and SunTrust's subsidiaries received as revenue all of the funds' management fees. Effective July 1, 1997, Plan Committee members added these proprietary mutual funds as investment options: (1) the STI Classic Capital Appreciation Fund; (2) the STI Classic Investment Grade Bond Fund; (3) the STI Classic Short-Term Bond Fund; and (4) the STI Classic Prime Quality Money Market Fund. Effective 1999, Plan Committee members added (5) the STI Classic Small Cap Growth Fund and (6) the STI Classic Growth and Income Fund.

Effective 2002, Plan Committee members added (7) the STI Classic Mid-Cap Equity Fund. Effective 2005, they added (8) the STI Classic International Equity Index Fund ("the STI International Fund"). We refer to these eight proprietary mutual funds collectively as the "STI Classic Funds."[5] The Plan did not include any non-proprietary mutual funds as investment options until 2005.

---

[5]Effective March 31, 2008, the STI Classic Funds were renamed the "RidgeWorth Funds," but we refer to these funds as the STI Classic Funds.

As to these proprietary mutual funds, the complaint alleges that Trusco Capital Management, Inc. ("Trusco"),[6] a SunTrust subsidiary and investment advisor, provided advisory services to the STI Classic Funds and received as revenue all of the investment management fees generated by the investment of assets into the STI Classic Funds. Trusco also served as an investment advisor to the Plan and attended Plan Committee Meetings.

Fuller invested in these three proprietary mutual funds in the Plan's menu of investment options: (1) the STI Classic Short-Term Bond Fund; (2) the STI Classic Prime Quality Money Market Fund; and (3) the STI Classic Growth and Income Fund. Fuller's complaint does not allege when she first contributed to her 401(k) Plan or when she first invested in these proprietary mutual funds.

Fuller's complaint does allege that she brings this ERISA action on behalf of the Plan participants and all similarly situated Plan participants (and their beneficiaries) who had a balance in their Plan accounts in any of the STI Classic Funds at any time from April 25, 2002 to December 31, 2010 (the "Class Period").

Fuller's complaint alleges "corporate self-dealing" at the expense of SunTrust's Plan participants. Fuller alleges that Defendants acted in their financial

---

[6]In Fuller's initial complaint, she also named Trusco and Trusco's predecessor RidgeWorth Capital Management ("Ridgeworth") as defendants. Her amended complaint, however, did not name Trusco and RidgeWorth as defendants. Unless otherwise noted, and consistent with Fuller's complaint, we use "Trusco" to refer to the entity that engaged in both (1) the activities of Trusco prior to RidgeWorth's creation and (2) the activities of RidgeWorth after its creation.

6

interests, and not in the interest of the Plan's participants, by selecting for the Plan the proprietary STI Classic Funds and then repeatedly failing to remove or replace them. Fuller alleges that the STI Classic Funds, affiliated with SunTrust entities, offered poor performance and high fees as compared to unaffiliated investment vehicles. Fuller alleges that the STI Classic Funds had poor performance and higher fees as compared to mutual funds offered by the Vanguard Group, Inc. and other "separately managed accounts and collective trusts managed by [non-affiliated] investment advisors."

Fuller's Count 1 focuses on prohibited transactions. Count 1 claims that the Plan Committee and its members (collectively "Committee Defendants") engaged in prohibited transactions involving the STI Classic Funds, in violation of ERISA § 406, 29 U.S.C. § 1106. Count 1 contends that the Committee Defendants caused the Plan "to pay, directly or indirectly, investment management and other fees" in connection with the Funds and should have known that this exchange of property between the Plan and the parties in interest was prohibited.

Count 2 involves the Committee Defendants' alleged breaches of their statutory duties of prudence and loyalty. Count 2 first incorporates by reference the initial 93 separate paragraphs of the complaint, which set out the relationship and self-dealing between the Defendants and related entities, the nature of the proprietary mutual funds, the low performance and high fees of the proprietary

7

mutual funds as compared with other funds, and why selection of those funds as investment options breached Defendants' duties of prudence and loyalty.  Count 2 alleges that the Committee Defendants "knew or should have known that the Affiliated [STI Classic] Funds had not been prudently selected to begin with" and that the Committee Defendants at each meeting "had cause to remove the Affiliated Funds based on poor performance and high fees, but failed to do so." Count 2 claims that "Committee Defendants, by their actions and omissions in repeatedly failing to remove or replace the [STI Classic] Funds, which offered poor performance and high fees, as investment options in the Plan during the Class Period breached their duties of prudence and loyalty" under ERISA § 404, 29 U.S.C. § 1104.  The concentration of the Plan's assets in the STI Classic Funds "reflect[ed] a failure to consider and obtain less expensive and better performing alternative, unaffiliated funds and services at the expense and to the detriment of the Plan and to the benefit of SunTrust subsidiaries and affiliates."

Count 3 involves the selection of the STI International Fund, which became effective in 2005.  As to that selection, Count 3 claims that Committee Defendants violated the fiduciary duties of prudence and loyalty by selecting the STI International Fund as an investment vehicle for the Plan.  According to the complaint, Committee Defendants breached their fiduciary duties under ERISA "because they gave no or inadequate consideration as to whether [the fund] was a

prudent or appropriate choice for the 401(k) Plan, and selected the fund because of its affiliation with SunTrust and selecting it would bring millions of dollars in additional revenue to SunTrust affiliates."

The claims in Counts 4 and 5 are derivative of the claims in Count 2.  Count 4 alleges, inter alia, that Defendant SunTrust, by participating in and abetting the fiduciary breaches described in Count 2, caused the Plan to invest in the STI Classic Funds.  Defendant SunTrust, as a party in interest, was liable under ERISA § 502, 29 U.S.C. § 1132.

Count 5 claims that the three Defendant Chairmen of the Compensation Committee had appointed Plan Committee members to serve on the Plan Committee and violated their fiduciary duties under ERISA by failing to remove and prudently monitor Committee Defendants.[7]

## C.    Defendants' First Motion to Dismiss

On June 20, 2011, Defendants moved to dismiss Fuller's complaint. Defendants argued that: (1) Fuller lacked standing to bring any claim as to the STI International Fund because she never invested in that fund; (2) ERISA's six-year limitations period, which runs from "the date of the last action which constituted a

---

[7]Count 6 of Fuller's complaint claims that previous Chairs of the Compensation Committee are liable as co-fiduciaries for the Committee Defendants' breaches of fiduciary duties and prohibited transactions.  Count 7 alleges that Committee Defendants violated their fiduciary duties under ERISA with respect to their approval of the National Commerce Financial Corporation ("NCFC") 401(k) Plan's investments being transferred into the investment options in the SunTrust 401(k) Plan.  In 2004, SunTrust acquired NCFC.  Counts 6 and 7 are not relevant to this appeal, and we do not discuss them further.

part of the breach or violation," barred Fuller's remaining claims in Counts 1, 2, 4, and 5; and (3) in addition to the six-year bar, ERISA's shorter three-year limitations period, which runs from the "earliest date on which the plaintiff had actual knowledge of the breach or violation," also applied because Fuller had "actual knowledge of the breach" of the duty of prudence when she first learned of the STI Classic Funds' excessive fees and poor performance. See ERISA § 413, 29 U.S.C. § 1113.

The exhibits, attached to Defendants' motion to dismiss, included copies of these documents: (1) the "SunTrust Banks, Inc. 401(k) Plan," which was "Amended and Restated Effective January 1, 2006"; (2) the 2006 Summary Plan Description ("SPD");[8] (3) the Quarterly Investment Performance ("QIP") Booklet current as of December 31, 2005; and (4) the "Plan Prospectus" for 2005 dated August 1, 2005. These documents provided Plan participants with detailed descriptions of each available fund. Specifically, the documents stated the composition of a fund, the general philosophy and goals of the fund, risks of the fund, who managed the fund, fees associated with the fund, the fund's assets, and the fund's past performance.

---

[8]The SunTrust Banks, Inc. 401(k) Plan stated that SunTrust had "caused this amendment and restatement of the SunTrust Banks, Inc. 401(k) Plan to be executed by its duly authorized officer" on March 15, 2006, to be effective as of January 1, 2006, except as otherwise provided in the Plan's amendment. The Senior Vice President of Corporate Benefits signed this statement and the Vice President of Human Resources attested to it.

There was no evidence showing Fuller ever had received these documents or any one of them.  There was also no evidence that any Defendant had sent Fuller these documents or that Fuller was ever provided with instructions as to how to access copies of the documents.  Further, no authenticating affidavit accompanied these documents, and the documents themselves do not indicate that they were publicly filed.[9]  Notably, too, Fuller cashed out her 401(k) Plan on October 12, 2005, and these documents, for the most part, are dated after that date.

**D.    Order Granting in Part and Denying in Part Defendants' First Motion to Dismiss**

On March 20, 2012, the district court granted in part and denied in part Defendants' motion to dismiss.

As to Count 1, the district court concluded that: (1) the selections of the funds (except for the STI International Fund) occurred in 1997 to 2002, well outside of the six-year limitations period, and thus, Fuller's prohibited-transaction claims as to those funds were time-barred; (2) Fuller lacked standing to assert her claim that the selection of the STI International Fund constituted a prohibited transaction under ERISA because she never invested in that fund; and (3) failing to remove the STI Classic Funds from the Plan options was not a "prohibited transaction" for the purposes of § 1106(a)(1)(D) because the statutory term refers

_____

[9]The SPD did state that it "constitute[d] part of a prospectus covering securities that have been registered under the Securities Act of 1933."  But there is no indication that the SPD alone was publicly filed.

only to "commercial bargains," including a sale, exchange, lease, or loan, but not a failure to sell stock in a retirement plan.  On appeal, Fuller does not challenge the district court's dismissal of her Count 1 claims.

Based on its prior finding that Fuller lacked standing as to the STI International Fund, the district court also dismissed Count 3's sole claim that Committee Defendants violated their fiduciary duties in selecting the STI International Fund.

As to Count 2, the district court determined that the six-year limitations period did not bar all of Fuller's claims and that her claims were timely to the extent she could show that, after April 9, 2004, Committee Defendants breached their ongoing fiduciary duties of monitoring and removing imprudent investments.[10]  The district court reasoned that Fuller might be able to prove that, after that date, "an investor acting prudently would have divested the plan of the funds at issue."

However, the district court also determined that: (1) based on the exhibit documents, Fuller had "actual knowledge" of the essential facts of her Count 2

---

[10]The district court derived this April 9, 2004 date by first subtracting the six-year limitations period from March 11, 2011 (the date Fuller filed her original complaint), which equaled March 11, 2005.  At this Rule 12(b)(6) juncture, Plaintiff Fuller alleged 336 days of tolling while administrative remedies were being exhausted.  Subtracting 336 days from the March 11, 2005 date produced the April 9, 2004 date.

Applying a six-year limitations period meant Fuller's Count 2 claims were timely as to Defendants' alleged failure to remove the STI Classic Funds during the time period from April 9, 2004 through March 11, 2011.

claims as early as 2005; (2) ERISA's three-year limitations period applied to her Count 2 claims; and (3) her Count 2 claims were thus timely only to the extent that she could show that the Committee Defendants violated their fiduciary duties by retaining (and not removing) the STI Classic Funds after April 10, 2007.[11]  Thus, the district court denied Defendants' motion to dismiss as to Count 2.  The district court did not discuss Fuller's standing to bring any of the claims in Count 2 relating to the STI Classic Funds in which she never invested.

The district court determined that, because Fuller's fiduciary duty claims in Count 2 survived, the derivative claims alleged in Counts 4 and 5 survived as well. Thus, the district court denied Defendants' motion to dismiss as to Counts 2, 4, and 5, but granted it as to all other claims in Fuller's complaint.

## E. Defendants' Second Motion to Dismiss and Nonparties' Motion to Intervene

In light of the district court's first ruling, Defendants moved to dismiss Fuller's remaining claims in Counts 2, 4, and 5, pointing out that Fuller took a full distribution of her 401(k) account's balance on October 12, 2005.  Given the district court's ruling that Fuller could sue only for Defendants' conduct after

---

[11]The district court calculated this April 10, 2007 date by subtracting 3 years and 336 days from the date of the lawsuit's filing as opposed to counting forward from the date Fuller obtained actual knowledge.  On appeal, the parties do not challenge this method of applying ERISA's three-year limitations period.  At the end of the day, we conclude Defendants did not show Fuller's actual knowledge, so we need not resolve whether this calculation is correct.

13

April 10, 2007, and the fact that Fuller cashed out her account in 2005, Defendants argued that all of Fuller's claims were time-barred.

Defendants attached to their motion a supporting affidavit of Clint Efird, "Vice President, 401(k) Plan Manager" for SunTrust.  Efird attested that Fuller was distributed her entire 401(k) investment on October 12, 2005.

On September 26, 2012, Sandra Stargel and Selethia Pruitt, represented by the same counsel as Fuller, moved to intervene, pursuant to Federal Rule of Civil Procedure 24.  Stargel and Pruitt alleged that, unlike Fuller, they had maintained investments in the Plan after April 10, 2007.  The district court denied Stargel and Pruitt's motion to intervene.

## F.  Order Granting Defendants' Second Motion to Dismiss and Denying Nonparties' Motion to Intervene

On October 30, 2012, the district court granted Defendants' motion to dismiss Fuller's remaining claims (Counts 2, 4, and 5).  The district court explained that, in its previous order, it had determined that, based on a three-year limitations period, only those claims that "accrued" after April 10, 2007 were timely.  Because no one disputed that Fuller ceased to hold any investment in the Plan after October 12, 2005, she lacked standing in the case.[12]

---

[12]On appeal, Fuller does not dispute that she would lack standing if the three-year limitations period applied due to her actual knowledge; rather, she argues that Defendants did not show her actual knowledge and, therefore, the three-year limitations period did not apply.

14

Fuller filed a timely notice of appeal to this Court. On appeal, she challenges only the district court's determination that ERISA's three-year limitations period applies and bars her claims in Counts 2, 4, and 5. Defendants respond that the district court did not err as to the three-year limitations period, and in any event, Fuller's claims are barred by the six-year limitations period.

## II.  STARGEL v. SUNTRUST BANKS, INC.

Before discussing Fuller's appeal, we must review what happened in the related case of Stargel v. SunTrust Banks, Inc., __ F. Supp. 2d __, 2013 WL 4775918 (N.D. Ga. 2013), where the district court (that dismissed Fuller's complaint) faced similar statute-of-limitations issues, but with different Plan participant plaintiffs. In Stargel, the district court acknowledged its earlier conclusion in Fuller, but upon further study, determined that it must reach different conclusions with respect to the three-year and six-year limitations periods raised in SunTrust's motion to dismiss Pruitt's complaint.[13]

---

[13]Although Stargel and Pruitt filed their initial complaint on October 31, 2012, Defendants, in the district court, conceded that the operative date of Stargel and Pruitt's complaint was March 11, 2011, the same date as the filing of Fuller's complaint. See Stargel, __ F. Supp. 2d at __, 2013 WL 4775918, at *1 n.1. The district court determined that Stargel's claims were not actionable because she had executed a Confidential Settlement Agreement, which released the Stargel Defendants from certain claims Stargel had. Thus, in deciding whether to dismiss the amended complaint, the district court addressed only Pruitt's claims.

15

Plaintiff Pruitt sued essentially the same Defendants named in Fuller's amended complaint.[14]  Pruitt alleged failure-to-remove claims (in her Count 1), which were identical in all relevant respects to the failure-to-remove claims in Count 2 of Fuller's amended complaint.

The district court stated that it was reversing course from its Fuller decision based on the intervening decisions of other circuits in David v. Alphin, 704 F.3d 327 (4th Cir. 2013), and Tibble v. Edison International, 729 F.3d 1110 (9th Cir. 2013), petition for cert. filed, (U.S. Oct. 30, 2013) (No. 13-550).  Stargel, __ F. Supp. 2d at __, 2013 WL 4775918, at *9-10.

In light of these intervening decisions, the district court determined that ERISA's six-year limitations period barred Pruitt's failure-to-remove claims in Count 1.  Id. at *11.  The district court found that Count 1 alleged, "in substance," that: (1) "the initial selection of the STI Classic Funds was imprudent"; (2) "the Funds offered poor performance and high fees but were selected in order to benefit the Funds' advisor, a SunTrust subsidiary"; and (3) "the Committee Defendants continually failed to remove the Funds from the menu of investment options

---

[14]The district court's Stargel decision was based on Stargel and Pruitt's amended complaint filed on February 19, 2013.  The only Defendants in Fuller not sued in Stargel were Harold Bitler and William O'Halloran, two individuals who served on the Plan Committee prior to June 2002.  The two additional Defendants in Stargel, not sued in Fuller, were (1) the Chief Financial Officer of SunTrust since April 2011 and (2) Ridgeworth.

despite their continuing poor performance and high fees." Id. at *7 (emphasis added).

The district court observed that Pruitt failed to allege that anything changed after the initial selection of the STI Classic Funds as investment options. The court emphasized that there was "no allegation which assert[ed] a drop in performance or a rise in advisory fees during the [six-year limitations period]." Id. at *8. Further, Pruitt "recite[d] no facts which, if proven, would establish a new, independent breach of fiduciary duty which [was] different from the original [selection, which was] time-barred." Id. Since Defendants selected the STI Classic Funds (with the exception of the STI International Fund) prior to 2002, Pruitt's claims were barred by the six-year limitations period.[15] Id. at *8, 11.

The district court also reversed course from Fuller as to its three-year limitations ruling, which had relied on actual knowledge. Id. at *13. The Stargel Defendants filed the same exhibits to those filed in Fuller.[16] This time, the district court found that the documents did not show that Pruitt had "actual knowledge" because the complaint and the documents did not state "that they were provided to Pruitt, or that she obtained knowledge of the facts from another source." Id. The

---

[15]The district court concluded that Pruitt lacked standing to bring any claim involving the STI International Fund because she never invested in the fund and did not assert how the offering of the fund could have injured her. Stargel, __ F. Supp. 2d at __, 2013 WL 4775918, at *13.

[16]Except for the QIP booklet, the district court found that the Stargel Defendants' exhibits were all authenticated. Stargel, __ F. Supp. 2d at __, 2013 WL 4775918, at *12-13.

17

district court concluded "[t]hat the documents (or the relevant facts in the documents) were provided to Pruitt is a necessary predicate to establishing the three-year bar," and thus, ERISA's three-year limitations period was not triggered. Id.

With this background, we now set forth Defendants' statutory duties of loyalty and prudence under ERISA. We then review and apply ERISA's limitations periods to Counts 2, 4, and 5 of Fuller's complaint.

### III.  ERISA

#### A.    Statutory Duties of Loyalty and Prudence

"ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans." Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 137, 111 S. Ct. 478, 482 (1990) (internal quotation marks omitted). To protect participants in employee benefit plans and their beneficiaries, ERISA "'establish[es] standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans.'" Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 44, 107 S. Ct. 1549, 1551 (1987).

ERISA's fiduciary duties are the "highest known to law." ITPE Pension Fund v. Hall, 334 F.3d 1011, 1013 (11th Cir. 2003). Under ERISA, a fiduciary must "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries" and "for the exclusive purpose of: (i) providing

18

benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan." ERISA § 404(a)(1)(A), 29 U.S.C. §1104(a)(1)(A). Further, a fiduciary must discharge his duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of a like character and with like aims." ERISA § 404(a)(1)(B); 29 U.S.C. § 1104(a)(1)(B). We have summarized the duties of loyalty and prudence under 29 U.S.C. § 1104(a)(1)(A)-(B) as follows: "[a] fiduciary must act exclusively for the fund's benefit . . . and must exercise the care of a prudent person." Brock v. Nellis, 809 F.2d 753, 754 n.1 (11th Cir. 1987).

ERISA authorizes a plan participant to bring a civil suit against plan fiduciaries for breaches of the fiduciaries' duties of loyalty and prudence. See ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2). However, the plan participant cannot seek to recover personal damages for misconduct, but must instead seek recovery that "inures to the benefit of the plan as a whole." Mass. Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 140, 105 S. Ct. 3085, 3089 (1985). Here, Fuller's suit is brought on behalf of the Plan itself pursuant to § 1132(a)(2).

## B.    Statute of Limitations

For claims of fiduciary breaches under § 1104(a)(1), ERISA provides that no action may be commenced "after the earlier of":

19

(1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or

(2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation . . . .

ERISA § 413, 29 U.S.C. § 1113.[17]  "Although the legislative history of ERISA's statute of limitations is scant, nothing in its language or goals indicates that courts are to read into it anything more than its plain meaning."  Nellis, 809 F.2d at 755.

The first issue is whether Fuller's Count 2 claims are barred by ERISA's three-year limitations period in § 1113(2).

## IV. ERISA'S THREE-YEAR LIMITATIONS PERIOD

The district court's ruling as to the three-year limitations period relied on the Plan, the SPD, the QIP Booklet, and the Plan Prospectus, all of which were attached to Defendants' motion to dismiss.

In general, we "do not consider anything beyond the face of the complaint and documents attached thereto when analyzing a motion to dismiss [under Rule 12(b)(6)]."  Fin. Sec. Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1284 (11th Cir. 2007).  "This [C]ourt recognizes an exception, however, in cases in which [1] a plaintiff refers to a document in its complaint, [2] the document is central to

---

[17]Section 1113 contains an exception, which provides that "in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation."  ERISA § 413, 29 U.S.C. § 1113.  Fuller makes no claim of fraud or concealment so we need not consider this part of § 1113.

[her] claim, [3] its contents are not in dispute, and [4] the defendant attaches the document to its motion to dismiss." Id.

A document is considered "undisputed" when the "authenticity of the document is not challenged." Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005). "To satisfy the requirement of authenticating . . . an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). The Federal Rules of Evidence provide a non-exhaustive list of ways to satisfy the authentication requirement. Fed. R. Evid. 901(b). One example of how to authenticate a document is to provide evidence that "a document was recorded or filed in a public office as authorized by law." Fed. R. Evid. 901(b)(7).

Plaintiff Fuller contends that the district court erred in considering the four documents for many reasons including: (1) only the QIP Booklet and the Plan Prospectus contained information about the STI Classic Funds' performance and fees, but Fuller's complaint never explicitly mentioned that Booklet and Prospectus; (2) although the SPD mentioned the QIP Booklet in a section of the SPD entitled "Documents Incorporated by Reference," the SPD did not actually incorporate the QIP Booklet by reference in that section; (3) the SPD did not mention the Plan Prospectus at all; (4) Fuller challenged the authenticity of the QIP Booklet and the Plan Prospectus, and Defendants never authenticated those

21

documents; and (5) Defendants have not cited any statute or regulation providing that the QIP Booklet and the Plan Prospectus had to be filed with any government agency, much less actually presented evidence showing that those documents actually were so filed.

Thus, Plaintiff Fuller makes a strong argument that the QIP Booklet and the Plan Prospectus are not authenticated, and the district court should not have considered those documents at all at the Rule 12(b)(6) stage. We need not resolve that issue, however. Even assuming that the documents could be considered, the district court erred in finding that Fuller had actual knowledge of Defendants' alleged breaches underlying her Count 2 claims.

In Nellis, we addressed the question of what constituted "actual knowledge of the breach or violation" under ERISA § 413, 29 U.S.C. § 1113, such that ERISA's shorter, three-year limitations period was triggered. See Nellis, 809 F.2d at 754-55. In that case, the Secretary of Labor brought suit against two attorneys who formerly represented a union pension fund. Id. at 753. The Secretary contended that the attorneys breached their fiduciary duties under ERISA by counseling the fund's trustees to purchase property through a mortgage foreclosure sale at an exaggerated price. Id. at 753-54. We held that, for an individual to have "actual knowledge of an ERISA violation, it is not enough that he had notice that something was awry; he must have had specific knowledge of the actual breach of

22

duty upon which he sues." Id. at 755 (emphasis added). Thus, we concluded that, although the Secretary may have known that the Fund paid an exaggerated price for the property, he did not learn that the defendants participated in the decision to pay the inflated price. Id. at 754. Thus, the Secretary's knowledge did not constitute "actual knowledge," but rather constituted "constructive knowledge," which was insufficient to trigger the three-year limitations period in § 1113. Id. at 754-55. Specifically, although the Secretary had knowledge of facts sufficient to prompt an inquiry, which, if properly carried out, would have revealed the attorneys' actions, the Secretary did not have actual knowledge of the attorneys' involvement in the transgression, which was necessary to trigger the three-year limitations period. Id.

In addition to this Nellis precedent, we observe that § 1113(2) expressly uses the term "actual" knowledge and not "knowledge" alone or "constructive knowledge." Based on our precedent and the language of the statute itself, we conclude Defendants had to show Fuller had actual knowledge of the breaches.

Here, we agree with the district court's decision in Stargel and conclude that the documents attached to Defendants' motion to dismiss did not show that Fuller had actual knowledge of the breach because Defendants did not show that the documents "were provided to [Fuller], or that she obtained knowledge of the facts [in the documents] from another source. . . . That the documents (or the relevant

23

facts in the documents) were provided to [Fuller] is a necessary predicate to establishing the three-year bar." See Stargel, __ F. Supp. 2d at __, 2013 WL 4775918, at *13. The documents are not addressed to Fuller, and there is no evidence that any Defendant gave or sent the documents to Fuller or that Fuller received them. Moreover, the exhibits, with the exception of the Plan Prospectus, were all dated after Fuller was distributed her entire investment in the Plan on October 12, 2005. Further, it is unclear whether the Plan Prospectus, which was dated August 1, 2005, was actually available to Fuller before October 12, 2005. Like the district court in Stargel, we decline to address what other facts, if any, Defendants would need to prove to show that Fuller had actual knowledge.[18] In sum, we conclude that, based on the record to date and at this Rule 12(b)(6) juncture, the district court erred in finding that the three-year limitations period applied to Fuller's claims in Count 2.

## V. ERISA'S SIX-YEAR LIMITATIONS PERIOD

The final issue is whether Fuller's Count 2 claims are barred by ERISA's six-year limitations period in § 1113(1). As the district court noted in Stargel, two circuits recently addressed ERISA's six-year limitations period in the context of claims that the defendant-fiduciaries imprudently selected and failed to remove

---

[18]For example, even if Defendants later show that Fuller received certain documents, we have no occasion to address what knowledge Fuller must possess to have actual knowledge of the Count 2 breaches, much less what knowledge the documents necessarily gave to her.

24

certain investment options from 401(k) Plan menus.  We outline those decisions and then analyze Fuller's claims.

## A.    The Fourth Circuit's David v. Alphin

In David v. Alphin, the Fourth Circuit considered the plaintiffs' claim that the defendants "breached their fiduciary duties of prudence and loyalty by failing to remove or replace the [bank-]affiliated funds as investment vehicles [in the bank's 401(k) Plan] despite poor performance and higher fees in comparison to other available alternatives during the relevant time period."  704 F.3d at 341.  The plaintiffs' complaint "allege[d] that the affiliated funds 'offered poor performance and high fees,' and that at each Committee meeting during the [relevant time period], [the defendants] 'had cause to remove the Affiliated Funds based on their poor performance and high fees, but failed to do so.'"  Id.

In addressing the plaintiffs' claim, the district court determined that "'while ERISA fiduciaries are in fact obliged to monitor funds contained in the Plan lineup for material changes, the court can find no continuing obligation to remove, revisit, or reconsider funds based on allegedly improper initial selection.'"  Id. (alterations adopted) (emphasis added).  The district court concluded that the defendants' initial selection of the bank-affiliated funds for inclusion in the bank's 401(k) plan triggered the limitations clock, such that the claims should be dismissed as untimely.  Id.

25

On appeal to the Fourth Circuit, the plaintiffs argued that "the district court erred in suggesting that [their claim was] an 'improper monitoring' claim." Id. The plaintiffs further asserted that their claim was based solely on "a violation of the well-settled duty to remove imprudent investments, not the duty to monitor." Id. (internal quotation marks omitted).

After reviewing the complaint, the Fourth Circuit determined that the plaintiffs were not claiming that the bank-affiliated funds "became imprudent, based on fund performance or increased fees, during the limitations period." Id. Rather, the complaint "ma[de] clear" that the plaintiffs' claim was "based on attributes of the funds that existed at the time of their initial selection—their alleged poor performance and high fees relative to alternative available fund options." Id. Therefore, the Fourth Circuit concluded that the plaintiffs' claim was "not truly one of a failure to remove an imprudent investment." Id. Instead, the plaintiffs' claim was, "at its core, simply another challenge to the initial selection of the funds to begin with." Id. Accordingly, the Fourth Circuit affirmed the dismissal of the plaintiffs' claim as untimely. Id.

Because it did not need to reach the issue, the Fourth Circuit expressly declined to "decide whether ERISA fiduciaries have an ongoing duty to remove imprudent investment options in the absence of a material change in circumstances." Id.

26

It is also worth mentioning the Fourth Circuit's earlier decision in DiFelice v. U.S. Airways, Inc., 497 F.3d 410 (4th Cir. 2007), which was quoted, but not analyzed in David, 704 F.3d at 332.  In DiFelice, the Fourth Circuit considered a pension plan which included an employer-stock fund as a plan investment option. The plaintiffs claimed that the plan fiduciary, U.S. Airways, breached its ERISA duties of prudence and loyalty by retaining the company stock following the attacks on September 11, 2001 and the decline in the airline industry.  497 F.3d at 415, 420-21.  Material changes in circumstances occurred regarding the investment option (U.S. Airways stock) in DiFelice, which were U.S. Airways' deteriorating financial condition and economic peril during the post-September 11, 2001 class period.  See id. at 415-16.  As a result, the DiFelice plaintiffs claimed the fiduciary insufficiently monitored the plan and imprudently failed to remove the stock as an investment option during that class period.  Id. at 419-20.  After a bench trial, the district court entered a judgment for the defendant-fiduciary, which the Fourth Circuit affirmed.  Id. at 413-14.  While the issues on appeal were different than those in this case, the DiFelice decision remains noteworthy because it factually involved materially changed circumstances following September 11, 2001 that apparently triggered the claim of failure to remove U.S. Airway's stock as an investment option in the pension plan. See id. at 415, 420-21.[19]

_____

[19]Ultimately, the district court concluded that U.S. Airways acted in a procedurally

27

**B.     The Ninth Circuit's Tibble v. Edison International**

Another noteworthy circuit decision involving investment options in an ERISA plan is the Ninth Circuit's decision in Tibble v. Edison International, 729 F.3d 1110.  The Tibble plaintiffs alleged "imprudence in plan design from when the decision to include those investments in the Plan was initially made."  729 F.3d at 1119.  The allegedly imprudent investment options were added to the Plan more than six years before the plaintiffs filed suit.[20]  Id. at 1118.  The Tibble plaintiffs produced no evidence of any significant change in condition to the plan's investments after the investments were selected.  Nevertheless, the Tibble plaintiffs argued that, because ERISA's fiduciary duties are ongoing and ERISA's six-year limitations period is triggered by the "last action" constituting the breach, their claims were "timely for as long as the underlying investments remain[ed] in the plan."  Id. at 1119.

---

prudent manner and properly monitored the company airline stock following September 11, 2001, and the Fourth Circuit affirmed the district court's ultimate conclusion.  DiFelice, 497 F.3d at 421, 424-25.

[20]The challenged investment options in the plan menu were an array of mutual fund-type investments that had higher administrative fees and that introduced a practice known as revenue sharing.  Tibble, 729 F.3d at 1118.  Under this revenue-sharing practice, "certain mutual funds collected fees out of fund assets and disbursed the fees to the Plan's service provider" and the defendant employer, "in turn, received a credit in its invoices from that provider."  Id.  The plaintiffs claimed that the inclusion of these mutual funds was imprudent and that the revenue sharing violated the plan document and a conflict-of-interest provision.  Id.

28

Relying on its earlier precedent,[21] the Ninth Circuit in Tibble held that "the act of designating an investment for inclusion [in the plan] starts the six-year [limitations] period . . . for claims asserting imprudence in the design of the plan menu." Id. According to the Tibble Court, "[c]haracterizing the mere continued offering of a plan option, without more, as a subsequent breach would render [ERISA's six-year limitations period] meaningless and could even expose present Plan fiduciaries to liability for decisions made by their predecessors—decisions which may have been made decades before and as to which institutional memory may no longer exist." Id. at 1120 (alterations adopted) (emphasis added) (internal quotation marks omitted). The Ninth Circuit in Tibble explained that the plaintiffs' "logic confuse[d] the failure to remedy the alleged breach of an obligation, with the commission of an alleged second breach, which, as an overt act of its own

---

[21]The earlier precedent is Phillips v. Alaska Hotel and Restaurant Employees Pension Fund, 944 F.2d 509 (9th Cir. 1991), applying ERISA's three-year limitations period. Tibble, 729 F.3d at 1119. The Ninth Circuit in Phillips declined to read the "actual-knowledge provision as permitting the maintenance of the status-quo, absent a new breach, to restart the limitations period under the banner of a 'continuing violation.'" Id. (citing Phillips, 944 F.2d at 520). The plaintiffs in Phillips claimed that the pension-plan trustees repeatedly failed to relax restrictive vesting rules, but the Phillips Court determined that ERISA's three-year limitations period barred claims based on "a continuous series of breaches" that "are of the same kind and nature" if the "plaintiff had actual knowledge of one of them more than three years before commencing suit." Phillips, 944 F.2d at 520-21. The Phillips Court explained that the "earliest date on which a plaintiff became aware of any breach" initiated the three-year limitations period because "[o]nce a plaintiff knew of one breach [based on the failure to amend the vesting rules], an awareness of later breaches would impart nothing materially new." Id. at 520.

29

recommences the [six-year] limitations period."[22] Id. (second emphasis added) (internal quotation marks omitted). Thus, the Tibble Court held that the selection of the challenged investments started the running of the six-year limitations period as to the plaintiffs' claim regarding imprudence in the plan's design. Id. at 1119.

The Ninth Circuit in Tibble was unpersuaded that its ruling would "give ERISA fiduciaries carte blanche to leave imprudent plan menus in place." Id. at 1120. Instead, a new six-year limitations period under ERISA would begin where a plaintiff could "establish changed circumstances engendering a new breach." Id. (emphasis added). The Tibble Court explained that "changed circumstances" could be shown where "significant changes in conditions occurred within the limitations period that should have prompted 'a full due diligence review of the funds, equivalent to the diligence review [fiduciaries] conduct when adding new funds to the Plan.'" Id. Thus, the "potential for future beneficiaries to succeed in making that showing illustrates why [the Ninth Circuit's] interpretation of [ERISA's six-year limitations period] will not alter the duty of fiduciaries to exercise prudence on an ongoing basis." Id.

---

[22]The Tibble Court also observed that "in the case of omissions the statute already embodies what the beneficiaries urge for the last action," as ERISA § 413(1)(B), 29 U.S.C. § 1113(1)(B) "ties the [six-year] limitations period to 'the latest date on which the fiduciary could have cured the breach of violation.'" 729 F.3d at 1119. Thus, the Tibble Court declined to import the concept of subsection (1)(B) into subsection (1)(A), as that would render subsection (1)(B) surplusage. Id.

The Tibble Court recognized that its ruling could result in injustices "[a]s with the application of any statute of limitations." Id. Nevertheless, the Ninth Circuit determined that ERISA's six-year limitations period evinced "a judgment by Congress that when six years has passed after a breach or violation, and no fraud or concealment occurs, the value of repose will trump other interests, such as a plaintiff's right to seek a remedy." Id. (internal quotation marks omitted).

## C.    Fuller's Claims

The gravamen of Fuller's claims in Count 2 is that the Committee Defendants breached their fiduciary duties of prudence and loyalty by failing to remove the proprietary STI Classic Funds as investment options due to their high fees and poor performance. Fuller also alleges in Count 2 that the proprietary STI Classic Funds were not prudently selected as investment options.

Here, the relevant limitations period is "six years after . . . the date of the last action which constituted a part of the breach or violation." See ERISA § 413(1), 29 U.S.C. § 1113(1). It is clear that any claim that the Committee Defendants breached their fiduciary duties by selecting the STI Classic Funds (with the exception of the STI International Fund[23]) is barred by ERISA's six-year limitations period. The selection of the funds all occurred prior to April 9, 2004,

---

[23]We note that the STI International Fund was selected in 2005, and thus, Fuller's claim in Count 3 concerning that fund's selection is timely under ERISA's six-year limitations period. However, the district court determined that Fuller lacked standing as to that claim, and Fuller has not appealed that ruling.

31

which is the earliest date a breach could occur and not be barred under ERISA's statute of limitations. The closer question is whether the alleged failure to remove the funds in subsequent years constitutes a cognizable breach separate from the alleged improper selection of the STI Classic Funds so that the six-year limitations period does not bar the claims.

Fuller's allegations concerning the imprudent acts that allegedly occurred at the time the STI Classic Funds were selected and those that occurred thereafter are strikingly similar. Fuller alleges that the STI Classic Funds were imprudently selected because: (1) there was no or insufficient review of the funds' performance and fees at the time of selection; (2) there was a failure to consider other non-affiliated investment vehicles for inclusion in the Plan's menu at the time of selection; and (3) the funds were selected only to benefit SunTrust subsidiaries. Fuller claims that the Committee Defendants acted imprudently by failing to remove the STI Classic Funds as investment vehicles because: (1) they did not heed or obtain information about the funds' low performance and high fees; (2) they failed to consider and select for the Plan less expensive and better performing alternative, unaffiliated investment vehicles; and (3) they failed to remove the STI Classic Funds only because the funds' retention benefited SunTrust subsidiaries.

Because the allegations concerning the Committee Defendants' failure to remove the STI Classic Funds are in all relevant respects identical to the

32

allegations concerning the selection process, we conclude that Fuller's complaint contains no factual allegation that would allow us to distinguish between the alleged imprudent acts occurring at selection from the alleged imprudent acts occurring thereafter.  Cf. Martin v. Consultants & Adm'rs., 966 F.2d 1078, 1087-88 (7th Cir. 1992) (concluding that the Secretary of Labor's 1984 bidding claim was barred by ERISA's statute of limitations, but the Secretary's 1987 bidding claim survived because the separate 1987 bidding activity was "more accurately characterized factually as a distinct transaction" that "involved a new and separate contract," such that the 1987 bidding activity was "a repeated, rather than a continued, violation").  Thus, as was the case in David, we find that Fuller's claims in Count 2 are, at their core, a challenge to the initial selection of the STI Classic Funds.  See David, 704 F.3d at 341.  Relying on the persuasive reasoning of David and Tibble, we therefore reject Fuller's argument that the continued failure to heed warnings of the funds' low performance and high fees or to seek out such information constitutes a distinct, cognizable breach separate from the alleged breach that occurred at selection.  See id.; Tibble, 729 F.3d at 1119-20.  Rather, we conclude that the Committee Defendants' failure to remove the STI Classic Funds was simply a failure to remedy the initial breach.  See Tibble, 729 F.3d at 1120.

Unlike the Fourth Circuit's decision in DiFelice, 497 F.3d 410, this is not a case of changed circumstances following the selection of the STI Classic Funds.

33

Importantly, Fuller does not allege that, after the STI Classic Funds' selection, the funds' performance declined, the funds' advisory fees increased, or a new conflict of interest arose.[24]  Thus, like the Fourth Circuit in David, we decline to decide whether the Committee Defendants had an ongoing duty to remove imprudent investment options from the Plan in the absence of a material change in circumstances.  See David, 704 F.3d at 341.

We add that categorizing the Committee Defendants' continued failures to remove the STI Classic Funds as investment options as separate violations without changed circumstances would allow Fuller to recover under a continuing violation theory.  However, as the Ninth Circuit observed in Tibble, this would thwart the purpose of ERISA's six-year limitations period, and Fuller has disclaimed any reliance on such a theory.  See Tibble, 729 F.3d at 1120.

We, therefore, conclude that, as alleged in Fuller's complaint, "the date of the last action which constituted a part of the breach" alleged in Count 2 was when the Committee Defendants selected the STI Classic Funds.  See ERISA § 413(1), 29 U.S.C. § 1113(1).  To hold otherwise would recast Fuller's time-barred

---

[24]We acknowledge that Fuller does not allege in her complaint that the STI Classic Funds had low performance and high fees upon selection, and thus, it is possible that the funds' performance and fees changed after the funds' selection.  However, without any allegations showing changed circumstances, we decline to speculate that such circumstances exist.  See Lanfear v. Home Depot, Inc., 679 F.3d 1267, 1275 (11th Cir. 2012) (providing that, to survive the motion-to-dismiss stage, the allegations in the complaint "'must be enough to raise a right to relief above the speculative level'").

34

selection claims as failure-to-remove claims, despite the absence of any allegations that would distinguish the two types of claims.  Accordingly, Fuller's claims in Count 2 are time-barred by ERISA's six-year period of limitations.

## VI.  CONCLUSION

For the reasons stated, we affirm the dismissal of Fuller's complaint.

**AFFIRMED.**

MOTZ, District Judge, concurring:

I concur in Judge Hull's opinion.  However, because I am concerned that the opinion might be interpreted as insulating an ERISA fiduciary who violated its fiduciary duty in making an initial selection of an investment from ever being held liable for continuing that investment in a Plan's portfolio, I write separately to say that a non-removal claim might be stated by a beneficiary who was not invested in the Plan when the initial selection was made.  In my judgment, financial institutions should not be permitted to invest in captive ERISA plans for their employees that are imprudently managed and charge excessive fees.  That might not have been evident when ERISA was first enacted; it should be now.