[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-11401

_____

D.C. Docket No. 6:10-cv-00120-MSS-GJK

OBERIST LEE SAUNDERS,
a.k.a. Oberist Lee Saunders, Jr.,

Plaintiff - Appellant,

versus

GEORGE C. DUKE, M.B.I. Agent,
THOMAS MATTHEWS, Agent,
CONRAD KILIAN, Agent,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(September 8, 2014)

Before WILSON and JORDAN, Circuit Judges, and ROTHSTEIN,[*] District

Judge.

JORDAN, Circuit Judge:

_____

[*] Honorable Barbara J. Rothstein, United States District Judge for the Western District of
Washington, sitting by designation.

We have repeatedly ruled that a police officer violates the Fourth Amendment, and is denied qualified immunity, if he or she uses gratuitous and excessive force against a suspect who is under control, not resisting, and obeying commands. *See, e.g.*, *Priester v. City of Riviera Beach, Florida*, 208 F.3d 919, 927 (11th Cir. 2000); *Slicker v. Jackson*, 215 F.3d 1225, 1233 (11th Cir. 2000); *Lee v. Ferraro*, 284 F.3d 1188, 1198 (11th Cir. 2002). Consistent with these decisions, we hold today that Oberist Saunders, who alleged that his head was "slammed" against the pavement with "extreme force" after he had been handcuffed and was lying prone on the ground, stated a valid Fourth Amendment claim for excessive force, and that the defendants—agents of the Florida Department of Law Enforcement and the Orlando Metropolitan Bureau of Investigation—were not entitled to qualified immunity. We therefore reverse the district court's dismissal of Mr. Saunders' Fourth Amendment claim.[1]

# I

Proceeding *pro se*, Mr. Saunders filed a complaint under 42 U.S.C. § 1983 against FDLE Agent George Duke and MBI Agents Thomas Matthews and Conrad Kilian. As amended, the operative complaint alleged the following facts.

On January 24, 2008, Mr. Saunders met with a couple of individuals at a gas station in Orlando, Florida, to sell them oxycodone pills. Those individuals,

---

[1] Mr. Saunders does not challenge the dismissal of his other claims, and we therefore do not address them.

however, turned out to be an undercover officer and a confidential informant. Mr. Saunders entered the front passenger seat of the undercover agent's car and conducted the narcotics transaction. After the sale was completed, Agents Duke, Matthews, and Kilian surrounded the vehicle with their weapons drawn. Agent Matthews ordered Mr. Saunders to place his hands on the car's windshield and not move. Mr. Saunders immediately complied with the command without resisting or attempting to flee. Agent Kilian then jerked Mr. Saunders out of the vehicle and pushed him down on the hot pavement in order to handcuff him.

After he was handcuffed, Mr. Saunders was held down against the hot pavement on his stomach for a "long period of time," though he was "not resisting, posing [a] threat, or attempting to flee." He told the agents that he was "getting burnt." During this time Mr. Saunders "was holding his face up off the hot pavement to keep from being burn[ed]." Though he was not resisting or attempting to flee, one of the agents "slammed" Mr. Saunders' face onto the pavement "with extreme force." Mr. Saunders did not see which one of the agents struck him, but all three agents were present at the time. When Mr. Saunders was brought to his feet, "blood was pouring out of his mouth [and] face from the impact against the pavement." Mr. Saunders suffered lacerations, injuries to his teeth and jaw, damage to his left eardrum, and emotional distress due to his head striking the pavement.

3

## II

The district court's dismissal of Mr. Saunders' Fourth Amendment claim is subject to plenary review. We accept the factual allegations in the complaint as true and view them in the light most favorable to Mr. Saunders. *See Butler v. Sheriff of Palm Beach Cnty.*, 685 F.3d 1261, 1265 (11th Cir. 2012). We also construe the complaint liberally because it was filed *pro se*. *See Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006).

"Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). After *Ashcroft v. Iqbal*, 556 U.S. 662, 678-69, 685-86 (2009), which applied the *Twombly* pleading standard in a civil rights/qualified immunity context, there is no longer a "heightened pleading" standard in "cases governed by Rule 8(a)(2), including civil rights [cases]" under § 1983. *Randall v. Scott*, 610 F.3d 701, 710 (11th Cir. 2010).

## III

With respect to the Fourth Amendment claim arising out of the alleged slamming of Mr. Saunders' head to the pavement, the district court ruled that Agents Duke, Matthews, and Kilian were entitled to qualified immunity. The district court acknowledged the existence of cases like *Hadley v. Gutierrez*, 526

4

F.3d 1324, 1330, 1332 (11th Cir. 2008) (holding that a police officer who struck a handcuffed, non-resisting suspect in the stomach violated the Fourth Amendment and was not entitled to qualified immunity), but explained that the "use of force during an arrest is not clearly unlawful if an arresting officer is faced with an uncooperative suspect or if an officer perceives resistance in a volatile situation." It then reasoned that, because Mr. Saunders had lifted his head off the pavement, "a reasonable officer in [the defendants'] position could have believed that the use of force to return [Mr. Saunders'] head to the pavement was lawful on the bases that [Mr. Saunders] was refusing to cooperate and/or resisting arrest when he lifted his head from the pavement." In so ruling, the district court erred.

## A

"Qualified immunity 'gives government officials breathing room to make reasonable but mistaken judgments about open legal questions.'" *Lane v. Franks*, 134 S. Ct. 2369, 2381 (2014) (citation omitted). Under this doctrine, "courts may not award damages against a government official in his personal capacity unless the official violated a statutory or constitutional right, and the right was 'clearly established' at the time of the challenged conduct." *Id.* (citation and some internal quotation marks omitted).

In determining whether a right was clearly established, we look to the decisions of the United States Supreme Court, the Eleventh Circuit, and the Florida

Supreme Court.  *See Barnes v. Zaccari*, 669 F.3d 1295, 1307 (11th Cir. 2012).  *See also Lane*, 134 S. Ct. at 2381-82.  Because it is undisputed that the agents here were acting within the scope of their discretionary authority, "the burden shifts to [Mr. Saunders] to show that qualified immunity is not appropriate."  *Lee*, 284 F.3d at 1194.  With these principles in mind, we turn to the qualified immunity analysis.

**B**

The Fourth Amendment's guarantee against unreasonable searches and seizures includes the right to be free from the use of excessive force in the course of an arrest.  *See id.* at 1197.  In order to determine whether the amount of force used was proper, a court must ask "whether the officer's conduct is objectively reasonable in light of the facts confronting the officer."  *Vinyard v. Wilson*, 311 F.3d 1340, 1347 (11th Cir. 2002).  In this respect, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  *Graham v. Connor*, 490 U.S. 386, 396 (1989).

"Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake."  *Id.* (citations and internal quotation marks omitted).  This objective analysis "requires careful

6

attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* Other considerations are "the need for the application of force, the relationship between the need and the amount of force used, [and] the extent of the injury inflicted." *Hadley*, 526 F.3d at 1329 (citation, internal quotation marks, and numbering omitted).

Mr. Saunders alleged that, while he was left on the hot pavement for a long period of time, he kept his head raised to avoid being burned. At the time he did this, he was handcuffed and on his stomach, and he was not resisting or attempting to flee. Nevertheless, one of the agents "slammed" his head against the pavement with "extreme force," resulting in a number of significant injuries. As we explain, Mr. Saunders' complaint sufficiently alleged a gratuitous use of force. Because "[o]ur cases hold that gratuitous use of force when a criminal suspect is not resisting arrest constitutes excessive force," *id.* at 1330, the district court should not have dismissed the Fourth Amendment claim.

We begin our discussion of Eleventh Circuit precedent with our 2000 decision in *Priester*. In that case, a police officer with a canine found a suspect who had been hiding and ordered him to lie down on the ground. Under the version of facts found by the jury, the officer released his dog to attack the suspect

7

after he had complied with the command to lie down.  We held that the officer violated the Fourth Amendment because the force used was "objectively unreasonable."  208 F.3d at 923-24.  We also concluded that the officer was not entitled to qualified immunity.  The suspect "did not pose a threat of bodily harm to the officers or to anyone else[,]" and was "not attempting to flee or resist arrest." *Id.* at 927.  As a result, "no particularized pre[-]existing case law was necessary for it to be clearly established that what [the officer] did violated [the suspect's] constitutional right to be free from the excessive use of force."  *Id.*

Slicker, decided the same year as *Priester*, presented facts remarkably similar to the allegations made by Mr. Saunders.  There some police officers, after arresting the plaintiff for disorderly conduct and handcuffing him, slammed his head against the pavement, knocking him unconscious.  Then, after the plaintiff came to, and while he was still handcuffed, the officers kicked him in the leg, back, and head.  215 F.3d at 1227-28.  We held that this force was excessive, and that the officers were not entitled to qualified immunity, as the plaintiff was "handcuffed and did not resist, attempt to flee, or struggle with the officers in any way."  *Id.* at 1233.

In *Lee*, decided in 2002, a police officer arrested a driver for improperly honking her horn.  After he had handcuffed the driver, the officer slammed her head against the trunk of her car.  That use of force, we ruled, violated the Fourth

Amendment because it was "plainly excessive, wholly unnecessary, and indeed, grossly disproportionate[,]" as there was no evidence that the driver posed any threat to the officer or to anyone else.  284 F.3d at 1198.  Relying on *Slicker*, we also denied qualified immunity, reasoning that "no reasonable officer could have believed that [such] actions were legal."  *Id.* at 1199.

Based on these cases, Mr. Saunders' allegations are more than sufficient to state a Fourth Amendment claim.  While he was on the ground and handcuffed, Mr. Saunders held his head up in order to avoid having his face burned by the hot pavement.  Though he was not resisting or posing a threat to anyone, one of the agents allegedly "slammed" his head into the pavement with "extreme force."  If these allegations are true, and we must assume that they are at this stage of the case, that force was unnecessary, disproportionate, and constitutionally excessive. *See, e.g.*, *Slicker*, 215 F.3d at 1233; *Lee*, 284 F.3d at 1198.[2]

---

[2] Agent Duke argues that he is entitled to dismissal because the complaint does not name him as the one who committed the Fourth Amendment violation.  Mr. Saunders responds that that under Rule 20 of the Federal Rules of Civil Procedure he is permitted to plead in the alternative with respect to the identity of the agent who slammed his head against the pavement. We agree with Mr. Saunders.

Rule 20(a)(2)(A) states that "persons . . . may be joined in one action as defendants if any right to relief is asserted against them . . . in the alternative with respect to or arising out of the same . . . occurrence."  Because we conclude that Mr. Saunders sufficiently alleged that one of the three agents struck him in violation of his Fourth Amendment rights, and that all three agents were present at the time, Mr. Saunders can plead in the alternative and pursue discovery to uncover the identity of the agent who allegedly struck him.  *See Dean v. Barber*, 951 F.2d 1210, 1215-16 (11th Cir. 1992) (allowing joinder of John Doe defendant where the *pro se* plaintiff sufficiently identified the defendant as the supervisory official at the jail where the incident occurred and discovery would provide the plaintiff with the information needed to specifically

## C

The allegations also make clear that the agents are not entitled to qualified immunity. "[A] handcuffed, non-resisting [suspect's] right to be free from excessive force was clearly established [by] February 2002," *Hadley*, 526 F.3d at 1333, or about six years before the alleged incident in this case occurred. Given Mr. Saunders' lack of resistance or threat, and the severity of the force used, no reasonable officer could have believed that such conduct was permissible. *See, e.g.*, *Slicker*, 215 F.3d at 1233; *Lee*, 284 F.3d at 1199.

The district court's grant of qualified immunity was based on the assumption that, by lifting his head, Mr. Saunders was being uncooperative or was resisting. That assumption, however, does not read the allegations of the complaint in the light most favorable to Mr. Saunders. First, the complaint can fairly be read to allege that Mr. Saunders kept his face off the pavement the whole time he was on the ground (which was for a "long period"), and did not just lift it up all of a

---

identify that defendant). *See also Block Indus. v. DHJ Indus., Inc.*, 495 F.2d 256, 258 (8th Cir. 1974) ("The need for alternative joinder of defendants [under Rule 20] typically arises when the substance of plaintiff's claim indicates that [the plaintiff] is entitled to relief from someone, but [the plaintiff] does not know which of two or more defendants is liable under the circumstances set forth in the complaint.") (citation omitted); *Sanchez v. City of Chicago*, 700 F.3d 919, 926 n.3 (7th Cir. 2012) ("In the Fourth Amendment context, it is not essential that the identity of the individual officer who applied the force be established. If the plaintiff can establish that an unknown officer subjected him to excessive force, he may seek to hold liable other, named officers who were present, observed the use of excessive force, had a reasonable opportunity to stop the use of that force, and failed to intervene."). We express no view, of course, as to whether Mr. Saunders will ultimately be able to succeed against anyone on his Fourth Amendment claim.

sudden in defiance of contrary commands.  Second, Mr. Saunders specifically alleged that, once he was handcuffed and on the ground, he did not resist and did not do anything to threaten the agents or anyone else.

But even if the complaint could be read to allege that Mr. Saunders disobeyed an order by lifting his head off the hot pavement, that minor transgression does not mean that the force allegedly used was a constitutionally permissible response, or that the agents are entitled to qualified immunity.  *See Lee*, 284 F.3d at 1197 ("In order to determine whether the amount of force used by a police officer was proper, a court must ask whether a reasonable officer would believe that this level of force *is necessary in the situation at hand*.") (emphasis added and citation and internal quotation marks omitted).  The agents did not, by Mr. Saunders' account, merely exert some pressure to guide his head downward.  Instead, they "slammed" his head against the pavement with "extreme force," and, not surprisingly, this resulted in significant injuries to Mr. Saunders.  The human skull is a relatively hearty vessel for the brain, but it will generally not fare well in a contest with hardened cement.[3]

**D**

---

[3] The alleged collision between Mr. Saunders' head and the pavement brings to mind one of Sancho Panza's many proverbs: "Whether the pitcher hits the stone, or the stone hits the pitcher, it is bad for the pitcher[.]"  MIGUEL DE CERVANTES SAAVEDRA, THE LIFE AND EXPLOITS OF THE INGENIOUS GENTLEMAN DON QUIXOTE OF LA MANCHA, Vol. II, Chapter XLIII, at 356 (Charles Jarvis trans., W. Lewis for S. A. and H. Oddy, Oxford 1809) [1615].

Agents Duke and Kilian (Agent Matthews did not file a brief) nevertheless argue that they are entitled to qualified immunity because they only used *de minimis* force and because Mr. Saunders did not suffer a constitutionally cognizable injury. Both arguments, in our view, are significantly flawed.

"[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396. As a result, "the application of *de minimis* force, without more, will not support a claim for excessive force in violation of the Fourth Amendment." *Myers v. Bowman*, 713 F.3d 1319, 1327 (11th Cir. 2013) (citation and internal quotation marks omitted). *See, e.g.*, *Rodriguez v. Farrell*, 280 F.3d 1341, 1351 (11th Cir. 2002) (in the course of arrest, officer handcuffed plaintiff in a manner that caused him injury and pain); *Nolin v. Isbell*, 207 F.3d 1253, 1255, 1258 & n.4 (11th Cir. 2000) (during the course of arrest, officer grabbed plaintiff and shoved him against a van, kneed him in the back and pushed his head against the van, searched his groin area, and then handcuffed him).

But this principle has never been used to immunize officers who use excessive and gratuitous force after a suspect has been subdued, is not resisting, and poses no threat. Indeed, we recognized the principle in *Slicker*, 215 F.3d at 1233, and *Lee*, 284 F.3d at 1197, and yet in both cases we held that there was a Fourth Amendment violation based on the use of gratuitous force on a handcuffed

12

and compliant suspect, and that the officers in question were not entitled to qualified immunity. Here the force allegedly used against Mr. Saunders was gratuitous and constitutionally excessive, so that qualified immunity is not appropriate.

The argument that Mr. Saunders did not suffer a constitutionally cognizable injury fares no better. First, Mr. Saunders alleged significant injuries resulting from having his head slammed against the pavement: lacerations, injuries to his teeth and jaw, damage to his left eardrum, and emotional distress. Such injuries are not *de minimis*. Second, in the context of an Eighth Amendment excessive force claim, the Supreme Court has recognized that "[a] [defendant] who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins v. Gaddy*, 559 U.S. 34, 38-39 (2010) (explaining that the "core judicial inquiry" for an excessive force claim under the Eighth Amendment is not based on the extent of the plaintiff's injury, but rather on "the nature of the force" used, i.e., "whether [the force] was nontrivial and 'was applied maliciously and sadistically to cause harm'"). "To conclude . . . that the absence of 'some arbitrary quantity of injury' requires automatic dismissal of an excessive force claim improperly bypasses [the] core [judicial] inquiry," which is the nature of the force. *Id.* at 39. We see no reason why the same rationale should not apply in a Fourth Amendment

excessive force case.  *See Hadley*, 526 F.3d at 1330 (officer's punch to the stomach of handcuffed and non-resisting suspect violated the Fourth Amendment).  After all, as we held in *Slicker*, 215 F.3d at 1231-32, a plaintiff claiming excessive force under the Fourth Amendment can seek nominal damages if he does not have compensable injuries.

## E

Agent Duke argues that no valid Fourth Amendment claim was stated against him because police reports attached to Mr. Saunders' complaint (in support of a now-dismissed conspiracy claim) show that he merely "applied shield coverage to the right from [the] passenger window where the drug transaction occurred."  Brief for Agent Duke at 21.  We are not persuaded.

It is true that documents attached to a complaint or incorporated in the complaint by reference can generally be considered by a federal court in ruling on a motion to dismiss under Rule 12(b)(6).  *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).   Here, however, Mr. Saunders expressly alleged in his complaint that the police reports that were submitted failed to properly and correctly document the excessive force inflicted on him and the injuries he suffered.  Where a civil rights plaintiff attaches a police report to his complaint and alleges that it is false, as Mr. Saunders did, the contents of the report cannot be considered as true for purposes of ruling on a motion to dismiss.

14

Otherwise, officers sued under § 1983 could just attach police reports referenced in a civil rights complaint to their motions to dismiss and ask courts to consider the contents of those reports even if they contradicted the allegations of the complaint. And that, as we have said, would be improper. *See Fuller v. SunTrust Banks, Inc.*, 744 F.3d 685, 695-96 (11th Cir. 2014) ("In general, we do not consider anything beyond the face of the complaint and documents attached thereto when analyzing a motion to dismiss [under Rule 12(b)(6)]. This [C]ourt recognizes an exception, however, in cases in which [1] a plaintiff refers to a document in [his] complaint, [2] the document is central to [his] claim, [3] *its contents are not in dispute*, and [4] the defendant attaches the document to its motion to dismiss.") (emphasis added and internal quotation marks and citations omitted).

## IV

Accepting the allegations in the complaint as true, as we must at the motion to dismiss stage, we conclude that the district court erred in dismissing Mr. Saunders' Fourth Amendment excessive force claim on qualified immunity grounds, and remand for further proceedings.[4]

**REVERSED AND REMANDED.**

---

[4] Because we conclude that Mr. Saunders has sufficiently alleged a Fourth Amendment excessive force claim and are remanding for further proceedings, we need not address whether the district court abused its discretion in denying Mr. Saunders' request for appointment of counsel pursuant to 28 U.S.C. § 1915(e)(1). On remand, we encourage the district court to reconsider whether it would be appropriate to appoint counsel for Mr. Saunders.