[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-12659
_____

D.C. Docket No. 2:14-cv-00005-WCO


ELIZABETH FUENTES-RANGEL,

Plaintiff - Appellee,

versus

DANIEL SCOTT WOODMAN,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(May 28, 2015)

Before HULL and BLACK, Circuit Judges, and ANTOON,* District Judge.

PER CURIAM:

_____
* Honorable John Antoon II, United States District Judge for the Middle District of
Florida, sitting by designation.

Daniel Scott Woodman appeals the district court's order granting Elizabeth Fuentes-Rangel's petition for return of their then-5-year-old child, NRW, to Mexico pursuant to the Hague Convention on the Civil Aspects of International Child Abduction (the Convention) and its implementing legislation, the International Child Abduction Remedies Act of 1988 (ICARA), 22 U.S.C. § 9003(b) (formerly cited as 42 U.S.C. § 11603(b)).  We assume the parties are familiar with the facts and procedural history and do not recount them here.  We address Woodman's arguments in turn.

First, in his brief,[1] Woodman argues the district court erred as a matter of law by determining NRW's habitual residence based on the facts and circumstances immediately prior to Woodman's retention.  According to Woodman, the determination of habitual residence in the prima facie case for the return of a minor child under the Convention and ICARA is made based on the facts and circumstances at the time of the hearing or trial.   Woodman's interpretation of the law is incorrect.  To establish a prima facie case for return of a child, the petitioner must establish by a preponderance of the evidence the child has been "wrongfully removed or retained within the meaning of the Convention."

---

[1] In his initial brief, Woodman argued the district court erred as a matter of law by determining NRW's habitual residence based on the facts and circumstances immediately prior to Woodman's retention rather than the facts and circumstances at the time of the hearing.  At oral argument, however, Woodman arguably withdrew this argument and agreed the relevant date for determining habitual residence was immediately before the alleged wrongful retention— in July 2012.  In any event, this argument fails on the merits.

22 U.S.C. § 9003(e)(1)(A).  Article 3 of the Convention, in turn, provides a retention is "wrongful" if, among other things, "it is in breach of rights of custody attributed to a person . . . under the law of the State in which the child was *habitually resident immediately before the removal or retention*."  *See* The Convention, Art. 3 (emphasis added).  Thus, a threshold question in deciding a case under the Convention is, what was the child's habitual residence "immediately before the removal or retention"?  *See id.*; *Seaman v. Peterson*, 766 F.3d 1252, 1259 (11th Cir. 2014) ("the habitual residence of the children at the time of their abduction . . . was in Mexico); *Chafin v. Chafin*, 742 F.3d 934, 938 (11th Cir. 2013) ("in order to prevail, [the petitioner] must show that . . . [the child] was a habitual resident of Scotland immediately before retention in the United States").  The district court's interpretation of the law was correct.

Woodman does not argue, as a factual matter, NRW's habitual residence would be somewhere other than Mexico if determined based on the facts and circumstances immediately before Woodman's retention.  Therefore, any such argument is waived.  *Greenbriar, Ltd. v. City of Alabaster*, 881 F.2d 1570, 1573 (11th Cir. 1989) ("[Appellant] has waived this issue by failing to argue it in its brief on appeal.").  Even if Woodman had not waived this argument, though, we would conclude NRW's habitual residence immediately before Woodman's

3

retention was Mexico for the reasons stated in the district court's thorough and well-reasoned order.

Second, Woodman argues the district court erred by rejecting his "now settled" affirmative defense[2] under Article 12 of the Convention. In considering whether NRW was settled in the United States within the meaning of Article 12 at the time of the hearing, the district court analyzed the following six factors: "(1) the child's age; (2) the stability and duration of the child's residence in the new environment; (3) whether the child attends school or day care consistently; (4) whether the child has friends and relatives in the new area; (5) the child's participation in community or extracurricular school activities, such as team sports, youth groups, or school clubs; and (6) the respondent's employment and financial stability." *See In re B. Del C.S.B.*, 559 F.3d 999, 1009 (9th Cir. 2009). Upon a complete review of the record, and with the benefit of oral argument, we conclude the district court's factual findings were not clearly erroneous and its legal conclusions were correct. *See id.* at 1008 ("[W]e review the district court's factual findings underpinning its Article 12 determination for clear error, and its ultimate

---

[2] The parties describe Article 12 of the Hague Convention as an "affirmative defense." In ICARA, Congress described Article 12 as an "exception." *See* 22 U.S.C. § 9001(a)(4) ("Children who are wrongfully removed or retained within the meaning of the Convention are to be promptly returned unless one of the narrow exceptions set forth in the Convention applies."); *id.* § 9003(e)(2)(B) ("[A] respondent who opposes the return of the child has the burden of establishing . . . by a preponderance of the evidence that any other exception set forth in article 12 . . . applies."). We do not decide whether Article 12 is properly categorized as an "affirmative defense" or if instead it is an "exception." We accept the parties' characterization.

conclusion that Brianna is not now settled in the United States de novo.").    NRW

was not "now settled" in the United States at the time of the hearing, again for the

reasons stated in the district court's thorough and well-reasoned order.

In addition, the district court held in the alternative that it would exercise its

discretion to order NRW returned to Mexico even if NRW were "now settled" in

the United States.  Woodman has abandoned any challenge to this holding because

he did not raise it on appeal.  *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d

678, 680 (11th Cir. 2014) ("When an appellant fails to challenge properly on

appeal one of the grounds on which the district court based its judgment, he is

deemed to have abandoned any challenge of that ground, and it follows that the

judgment is due to be affirmed.").

Finally, even assuming Woodman had challenged the district court's

alternative holding that it would order NRW returned to Mexico despite being

"now settled" in the United States, the district court did not abuse its discretion.

*See* Hague Convention art. 18 ("The provisions of this Chapter do not limit the

power of a judicial or administrative authority to order the return of the child at any

time.").  We agree with the district court that "[a]llowing N.R.W. to remain with

[Woodman] would condone [Woodman's] conscious decision to opt out of

established legal processes in favor of international 'self-help.'"  *See also*

*Friedrich v. Friedrich*, 78 F.3d 1060, 1067 (6th Cir. 1996) ("[A] federal court

5

retains, and should use when appropriate, the discretion to return a child, despite the existence of a defense, if return would further the aims of the Convention.").

    **AFFIRMED**.