# United States Court of Appeals for the Federal Circuit

———————————

**HEALTHIER CHOICES MANAGEMENT CORP.,**
*Plaintiff-Appellant*

**v.**

**PHILIP MORRIS USA, INC., PHILIP MORRIS PRODUCTS S.A.,**
*Defendants-Appellees*

———————————

2022-1268

———————————

Appeal from the United States District Court for the Northern District of Georgia in No. 1:20-cv-04816-TCB, Judge Timothy C. Batten, Sr.

-------------------------------------------------

**HEALTHIER CHOICES MANAGEMENT CORP.,**
*Plaintiff-Appellant*

**v.**

**PHILIP MORRIS USA, INC., PHILIP MORRIS PRODUCTS S.A.,**
*Defendants-Appellees*

———————————

2022-1563

———————————

Appeal from the United States District Court for the Northern District of Georgia in No. 1:20-cv-04816-TCB, Judge Timothy C. Batten, Sr.

———————————————

Decided:  April 12, 2023

———————————————

BARRY P. GOLOB, Cozen O'Connor P.C., Washington, DC, argued for plaintiff-appellant.  Also represented by THOMAS FISHER.

MAXIMILIAN A. GRANT, Latham & Watkins LLP, Washington, DC, argued for all defendants-appellees.  Defendant-appellee Philip Morris Products S.A. also represented by GABRIEL K. BELL, DAVID ZUCKER; RICHARD GREGORY FRENKEL, Menlo Park, CA.

ADAM BANKS, Weil, Gotshal & Manges LLP, New York, NY, for defendant-appellee Philip Morris USA, Inc.  Also represented by ELIZABETH WEISWASSER; WILLIAM SUTTON ANSLEY, Washington, DC; MARK PINKERT, Miami, FL.

———————————————

Before TARANTO, STOLL, and CUNNINGHAM, *Circuit Judges*.

STOLL, *Circuit Judge*.

In these combined appeals, Healthier Choices Management Corp. challenges the district court's (1) dismissal of its original complaint, (2) denial of its motion for leave to amend its complaint, and (3) grant of attorneys' fees.  For the reasons below, we reverse the district court's dismissal of the original complaint and denial of leave to amend.  Accordingly, we vacate the award of attorneys' fees.  We remand for further proceedings consistent with this opinion.

## BACKGROUND

Healthier Choices Management Corp. (HCM) sued Philip Morris USA, Inc. and Philip Morris Products S.A. (collectively, "Philip Morris") in the United States District Court for the Northern District of Georgia for allegedly infringing at least one claim of U.S. Patent No. 10,561,170. The '170 patent is directed to an electronic nicotine-delivery device.

Two independent claims of the '170 patent are relevant to this appeal: claim 1 and claim 5. Claim 1 provides:

> 1. An electronic pipe, comprising:
>
>> a battery, an electronic module, a combustible material reservoir, and a heating element fixed in the combustible material reservoir;
>>
>> combustible material loaded into the combustible material reservoir;
>>
>> wherein the pipe is structured to transmit an electric current from the battery to the heating element, the heating element *initiating a combustion reaction* in the combustible material reservoir.

'170 patent col. 9 l. 36–col. 10 l. 4 (emphasis added to disputed portion).

> Claim 5 provides:
>
> 5. A method of at least partially combusting a combustible material for inhalation, comprising:
>
>> providing an electronic pipe comprising a battery, an electronic module, a combustible material reservoir, and a heating element fixed in the combustible material reservoir;

> loading the combustible material into the combustible material reservoir;
>
> activating the electronic pipe such that electric current is transmitted from the battery to the heating element;
>
> *initiating*, by way of the heating element, *a combustion reaction* in the combustible material reservoir, *the combustion reaction at least partially combusting the combustible material.*

*Id.* at col. 10 ll. 16–29 (emphasis added to disputed portion).

Philip Morris manufactures an electronic nicotine-delivery system, called the IQOS system, that "heats tobacco-filled sticks wrapped in paper ['HeatSticks'] to generate a nicotine-containing aerosol." *Healthier Choices Mgmt. Corp. v. Philip Morris USA, Inc.*, No. 20-cv-4816, 2021 WL 3121487, at \*1 (N.D. Ga. July 23, 2021) (*Dismissal Op.*). Philip Morris markets the IQOS system as a "heat-not-burn" system, meaning that the tobacco is heated at a low enough temperature that the tobacco does not burn, therefore, in Philip Morris's view, preventing combustion. Appeal No. 22-1268 Appellees' Br. 7; *see Dismissal Op.*, 2021 WL 3121487, at \*1.

HCM alleged in its original complaint that the IQOS system infringes claims 1 and 5 of the '170 patent. It asserted in its complaint that, notwithstanding Philip Morris's claims that the IQOS system is combustion-less, the IQOS system does in fact initiate a combustion reaction that at least partially combusts the HeatStick. J.A.[1] 71. The IQOS system does so, according to the original

---

[1]     Citations to "J.A." refer to the Joint Appendix filed in Appeal No. 22-1268.

complaint, by "transmitting an electrical current from the battery to the heating blade in the [IQOS system which] results in combustion of at least a portion of the [Heat]Stick." J.A. 70.

Philip Morris filed a motion under Federal Rule of Civil Procedure 12(b)(6) to dismiss the complaint for failure to state a claim, arguing that an exhibit HCM attached to its original complaint conclusively demonstrated that the IQOS system does not initiate a combustion reaction as required by the asserted claims. Specifically, HCM's complaint cited to various portions of a Modified Risk Tobacco Product Application (MRTPA) that Philip Morris submitted to the Food and Drug Administration when it sought a modified risk order to sell the IQOS system.[2]

The district court agreed that the MRTPA established that the IQOS did not initiate a combustion reaction and thus did not infringe the asserted claims; the court accordingly granted Philip Morris's motion to dismiss. HCM then moved for leave to file an amended complaint, attaching to its motion the amended complaint it sought to file and an expert declaration. The district court determined that HCM did not plausibly allege, in either the original or the amended complaint, that the accused IQOS system initiates a combustion reaction as required by the claims and, thus, did not state a proper claim for infringement. *See Healthier Choices Mgmt. Corp. v. Philip Morris USA, Inc.*, No. 20-cv-4816, 2021 WL 6014854, at *4 (N.D. Ga. Dec. 3, 2021). The district court denied HCM's motion for leave to file an amended complaint. Philip Morris then moved to

---

[2] Also attached to the original complaint was a press release from the FDA. *See* J.A. 92–96. Because the press release primarily discusses the contents of the MRTPA, we discuss only the MRTPA.

recover its attorneys' fees under 35 U.S.C. § 285, and the district court granted the motion.

HCM appeals.  We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## DISCUSSION

On appeal, HCM argues that (1) the district court erred in dismissing its original complaint; (2) the district court erred in denying HCM's motion for leave to amend its complaint; and (3) if remanded, the case should be reassigned to a different district judge.  Finally, HCM challenges the district court's award of attorneys' fees to Philip Morris.  We address each argument in turn, turning first to HCM's challenge to the district court's dismissal of its original complaint.

## I

"We apply regional circuit law when reviewing motions to dismiss for failure to state a claim under Rule 12(b)(6)." *Weisner v. Google LLC*, 51 F.4th 1073, 1081 (Fed. Cir. 2022).  The Eleventh Circuit "review[s] the district court's grant of a motion to dismiss for failure to state a claim de novo, accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff."  *Hunt v. Aimco Props., L.P.*, 814 F.3d 1213, 1221 (11th Cir. 2016).  A plaintiff has alleged a plausible complaint when the court can "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Philip Morris contends that, under Eleventh Circuit law, the court must accept as true all statements contained in an exhibit that was attached to and relied on by the complaint absent the plaintiff's express disavowal of any such statements.  *See* Appeal No. 22-1268 Appellees' Br. 45. Philip Morris argues that, in its complaint, HCM improperly attempted to "cherry-pick[]" certain sentences from the exhibit in support of its allegations, yet disavowed others.

*Id.* at 31–32.  Furthermore, according to Philip Morris, the original complaint does not sufficiently disavow the MRTPA's repeated statements that the IQOS system is a heat-not-burn system and thus that there is no combustion.  *Id.* at 42–43; *see id.* at 23–24.  Accordingly, Philip Morris maintains that HCM's allegation that the IQOS system initiates combustion of at least a portion of the burn stick was implausible, and the complaint was properly dismissed.

Under Eleventh Circuit law, a district court can "consider exhibits attached to a complaint in ruling on a motion to dismiss, and if the allegations of the complaint *about a particular exhibit* conflict with the contents of the exhibit itself, the exhibit controls."  *Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016) (emphasis added).  Thus, this occurs "when a plaintiff attaches a document to his complaint but his allegations about what the document is or says contradict the document itself."  *Id.*; *see Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007) ("Where there is a conflict between allegations in a pleading and exhibits thereto, it is well settled that the exhibits control." (quoting *Simmons v. Peavy-Welsh Lumber Co.*, 113 F.2d 812, 813 (5th Cir. 1940))).  But this does not mean that factual assertions made in an exhibit always control over contrary factual assertions on the same subject made in a complaint.  "Where a . . . plaintiff attaches a . . . report to his complaint and alleges that it is false, . . . the contents of the report cannot be considered as true for purposes of ruling on a motion to dismiss."  *Saunders v. Duke*, 766 F.3d 1262, 1270 (11th Cir. 2014).  Similarly, "[w]hen a complaint contains specific, well-pleaded allegations that either do not appear in the attached exhibit or that contradict conclusory statements in the exhibit," courts in the Eleventh Circuit credit the allegations in the complaint.  *Gill ex. rel. K.C.R. v. Judd*, 941 F.3d 504, 514 (11th Cir. 2019).

The Eleventh Circuit has held that a conclusory, general allegation in the complaint might not suffice in the face of specific, material, uncontroverted facts stated in an exhibit. For example in *Griffin Industries*, 496 F.3d at 1194–95, Griffin Industries, the owner of a chicken rendering plant, sued state and local agencies, accusing them of violating its constitutional rights to equal protection by disparate treatment. Griffin Industries alleged in its complaint that the defendants had "singled [it] out" and that a "similarly situated" entity had not been subject to similar treatment. *Id.* at 1200. The Eleventh Circuit determined this "conclusory allegation" in the complaint to be untrue in light of the exhibits. *Id.* at 1205. Although the complaint addressed some factors "relevant to an objectively reasonable governmental decisionmaker," it left some of these factors unaddressed. *Id.* at 1207. One of these unaddressed factors—accurate self-reporting—was discussed extensively by one of the attached exhibits; it showed that the competitor self-reported while Griffin Industries did not. *Id.* at 1206–07. Because the exhibit's specific discussion of this factor negated the conclusory allegation that Griffin Industries and its competitor were similarly situated, the Eleventh Circuit concluded that Griffin failed to plausibly allege an Equal Protection Clause violation. *Id.* at 1207.

In contrast, the Eleventh Circuit determined that the plaintiff's complaint adequately disavowed the contents of an attached exhibit in *Saunders*, 766 F.3d at 1270. In *Saunders*, the plaintiff sued law enforcement officers, alleging that they had used excessive force in arresting him, and attached several police reports to his complaint. *Id.* The Eleventh Circuit determined that the attached police reports should not have been considered in ruling on a Rule 12(b)(6) motion to dismiss. Specifically, the contents of the reports could not be considered as true for purposes of ruling on a motion to dismiss because the plaintiff "expressly alleged in his complaint that the police reports that

were submitted failed to properly and correctly document the excessive force inflicted on him and the injuries he suffered." *Id.* In this case, the complaint had adequately disavowed the exhibit where it alleged the exhibit to be false.

The Eleventh Circuit undertook a similar analysis in *Hoefling*, 811 F.3d at 1271. In that case, the plaintiff alleged in his complaint that the City of Miami violated his Fourth and Fourteenth Amendment rights when officers seized his resident sailboat and destroyed it. In his original complaint, the plaintiff had attached incident reports, which were written by officers to inform the plaintiff of the derelict state of his sailboat. *Id.* at 1276. In his second amended complaint, the plaintiff alleged that the officer gave him "an 'incorrect opinion' that the sailboat was derelict or at risk of being derelict." *Id.* at 1278. The Eleventh Circuit noted that, "[a]t the very least, the allegations in the . . . complaint dispute [the incident] report that the sailboat was in a derelict state. Moreover, [the] complaint does not admit (or give any credence to) the statement in the [incident] report that the sailboat was found covered with garbage." *Id.* In light of the plaintiff's disavowal of the contents of the attached report, the Eleventh Circuit determined that the district court "should not have accepted as true the contents of the incident reports to find, when ruling on the motion to dismiss the second amended complaint, that Mr. Hoefling had notice that his sailboat was derelict or that the vessel was in fact derelict." *Id.*

In *Gill*, the Eleventh Circuit considered how specific a complaint's allegation must be for the district court to accept the allegation over statements in the attached exhibits for purposes of a motion to dismiss. 941 F.3d at 515. There, the plaintiff, a student, sued a deputy who entered her home and arrested her without a warrant, arguing among other things that the deputy did not have probable cause to make the arrest. On the day the deputy arrested the plaintiff, he filled out an arrest affidavit explaining how he reached the conclusion that there was probable cause to

arrest the plaintiff for the crime of aggravated stalking of a classmate. The affidavit included summaries of interviews the deputy conducted with that classmate and other students, some of which included statements that the plaintiff had bullied that classmate. The plaintiff attached the arrest affidavit to her complaint and referred to it several times in the complaint. *Id.* at 512. The Eleventh Circuit compared the allegations in the complaint with their counterparts in the arrest affidavit, finding some of the allegations "specific enough" to "prevent th[e counterpart] statement in the affidavit from being considered" for the motion to dismiss. *Id.* at 515. For instance, the complaint's allegation that "the description of the fight was deliberately false and misleading" was too general or conclusory because "it [did] not say what part of the description was false and misleading and in what way." *Id.* On the other hand, the complaint's statement that the plaintiff "never confessed to bullying" the classmate was "specific enough . . . to disregard all of the statements about bullying that [the] affidavit says came from [the plaintiff]'s confession." *Id.*

Eleventh Circuit law is thus clear: if a plaintiff's complaint contains only a conclusory allegation that is directly contradicted by more concrete statements in an attachment to the complaint, the statements in the attachment will control. *See, e.g.*, *Griffin Indus.*, 496 F.3d at 1205. In contrast—as in *Saunders*, *Hoefling*, and *Gill*—a plaintiff can sufficiently disavow statements in attachments to a complaint where the complaint makes a specific contention contradicting those statements. In no case, however, has the Eleventh Circuit required that a plaintiff seeking to disavow statements in an attachment to its complaint recite certain magic words to do so. *See, e.g.*, *Gill*, 941 F.3d at 515 (determining that, under the totality of the circumstances, a certain allegation was "specific enough" to disregard the contents of the attachment).

HEALTHIER CHOICES MANAGEMENT CORP. v.
 PHILIP MORRIS USA, INC.

11

We decline to depart from the Eleventh Circuit's precedent, which we are bound to apply. In this case, HCM's original and amended complaints recite sufficient allegations to raise a facially plausible case of patent infringement. The allegations in HCM's original complaint specifically rejected the notion that the IQOS system does not initiate a combustion reaction:

> [O]n information and belief, while Defendants assert that the Accused Infringing Product does not cause combustion of the IQOS® Tobacco Sticks, Defendants' own testing concludes that 97%, not 100%, of the harmful chemicals associated with combustion are eliminated by the Accused Infringing Product, and the presence of 3% of the two important combustion markers nitrogen oxides and carbon monoxide indicates that at least some combustion occurs when the Accused Infringing Product is operated as designed and intended by Defendants.

J.A. 71.

Here, the original complaint explains in detail why it disagrees with Philip Morris's characterization in the MRTPA of its IQOS system as combustion-less. The complaint plausibly alleges that Philip Morris's own testing concludes that the "presence of 3% of the two important combustion markers . . . indicates that at least some combustion occurs." *Id.*

These allegations are neither general nor conclusory. Instead, we determine that these allegations are specific enough, under Eleventh Circuit law, to disavow the MRTPA's statements that the IQOS system does not initiate a combustion reaction. The allegations made in HCM's complaint are like those made in the complaints considered in *Saunders*, *Hoefling*, and *Gill*. The original complaint directly acknowledges the MRTPA's statement of "no combustion" but gives a plausible theory for why the IQOS

system might nonetheless initiate combustion of at least a portion of the HeatStick.

Under the Federal Rules of Civil Procedure, the district court must construe the complaint in a light most favorable to the plaintiff and accept as true all facts which the plaintiff alleges. Fed. R. Civ. Pro. 12(b)(6); *see also Gill*, 941 F.3d at 511. In this case, HCM's original complaint contained specific allegations that the IQOS system initiated a combustion reaction. *See* J.A. 70–71. In our view, these specific, targeted allegations are sufficient to disavow the contradictory statements in the attached MRTPA in which Philip Morris self-reported that its products do not combust. We thus hold that, in its original complaint, HCM stated a valid claim for patent infringement under Eleventh Circuit law notwithstanding attachment of the MRTPA exhibit.

## II

We now turn to HCM's amended complaint, which presents an even stronger case in favor of HCM.

We apply regional circuit law when reviewing a district court's decision regarding motions for leave to file an amended complaint. *Unigene Lab'ys, Inc. v. Apotex, Inc.*, 655 F.3d 1352, 1359 (Fed. Cir. 2011). The Eleventh Circuit reviews such decisions for an abuse of discretion. *Williams v. Bd. of Regents of Univ. Sys. of Ga.*, 477 F.3d 1282, 1291 (11th Cir. 2007). A district court abuses its discretion when it bases its decision on an "erroneous view of the law or on a clearly erroneous assessment of the evidence." *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 572 U.S. 559, 563 n.2 (2014).

Under Eleventh Circuit law, an amended complaint supersedes the previous complaint. *Fritz v. Standard Sec. Life Ins. Co. of N.Y.*, 676 F.2d 1356, 1358 (11th Cir. 1982). Therefore, a district court, in considering an amended complaint, should not consider the now "abandoned" original

complaint and its attachments. *See TVPX ARS, Inc. v. Genworth Life & Annuity Ins. Co.*, 959 F.3d 1318, 1327 (11th Cir. 2020).

In the Eleventh Circuit, however, district courts may consider a document outside the pleadings and treat it as part of the pleadings for purposes of Rule 12(b)(6) if the document is "(1) central to the plaintiff's claim; and (2) undisputed." *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002); *see Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997). A document is "central" to a claim when its contents are at "the very heart" of the dispute. *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). For example, a contract is central to a contract dispute and a patent is central to a patent infringement case. A document is "undisputed" if its authenticity is not challenged. *Horsley*, 304 F.3d at 1134.

In its proposed amended complaint, HCM did not attach the MRTPA and removed any citations to the MRTPA that were in its original complaint. At the same time, HCM continued to assert that "combustion occurs in the IQOS® system." J.A. 675. HCM's proposed amended complaint includes allegations, more explicit than those in its original complaint, regarding how the IQOS system initiates combustion of at least a portion of the HeatStick. Specifically, HCM's proposed amended complaint includes the following allegations:

47. A combustion reaction is a chemical reaction that requires fuel, oxygen and an ignition source. On information and belief, the HeatStick provides fuel, air provides oxygen, and the IQOS® system provides a heating blade, which is the heating element and ignition source.

48. On information and belief, the IQOS® system generates combustion markers, including carbon monoxide and carbon dioxide, in sufficient

quantities to indicate that combustion occurs in the IQOS® system.

49. On information and belief, the heating element initiates a combustion reaction in the combustible material reservoir by heating the heating blade, which in turn heats the HeatStick to temperatures at or below 350°C. On information and belief, at temperatures at or below 350°C, the IQOS® system initiates a combustion reaction in the chamber of the system. Specifically,

> a. A combustible material is loaded into the combustible material chamber;
>
> b. The heating blade pierces the HeatStick and initiates a combustion reaction in the HeatStick;
>
> c. A thermogravimetric analysis-differential scanning calorimetry ("TGA-DSC") analysis of a HeatStick evidences an exothermic reaction between 250°C and 340°C and therefore, a combustion reaction; and
>
> d. The concentrations of CO and $CO_2$ that are produced by the HeatStick, after the heating blade pierces and heats the HeatStick, evidence a combustion reaction.

J.A. 675–76 (citations omitted).

HCM attached the declaration of Dr. Michael Deible, its technical expert, to its proposed amended complaint in further support of these allegations. Dr. Deible opined the following, each of which, taken as true, supports HCM's allegations that the IQOS system initiates a combustion reaction: (1) that his testing data shows that combustion of the HeatStick occurs "beginning at a temperature of about 250 °C and at a temperature of about 400 °C," as shown by weight loss in the HeatStick, J.A. 705–06; (2) that

combustion of a HeatStick produces CO and $CO_2$, J.A. 708; and (3) that the HeatSticks are blackened and charred after normal use, with portions of the HeatStick "exhibit[ing] ash, indicative of combustion," J.A. 708–09.

Before the district court, Philip Morris contended that the MRTPA was so central to the proposed amended complaint that it should have been treated as if attached to that complaint. Appeal No. 22-1268 Appellees' Br. 35–42 (citing *Horsley*, 304 F.3d at 1134). Even assuming, as Philip Morris contends and the district court found,[3] that the MRTPA is "central" to HCM's patent infringement allegations—and thus that it should have been treated as if attached to the amended complaint[4]—we conclude that the allegations in the proposed amended complaint and attached expert report are specific enough under Eleventh Circuit law to disavow the MRTPA's statements regarding no combustion and raise a plausible allegation of patent infringement. The Eleventh Circuit "do[es] not permit a district court to consider, on a motion to dismiss, exhibits attached to an earlier complaint that a plaintiff has expressly disavowed or rejected as untrue in a subsequent

---

[3]    *Horsley*, a case cited by both Philip Morris and the district court, is distinguishable. *Horsley* was a defamation suit where the district court considered statements made in a newspaper article and in a transcript of a television broadcast. 304 F.3d at 1128, 1133–34. Although the Eleventh Circuit in *Horsley* articulated what is required for a district court to consider documents outside the pleadings for a motion to dismiss (i.e., centrality and authenticity), *Horsley* did not concern whether the plaintiff disavowed the contents of such documents.

[4]    To be clear, we are not convinced that the one-sided MRTPA document that Philip Morris submitted to the FDA is "central" to the patent infringement dispute here. We simply assume so for purposes of resolving this appeal.

amended complaint." *Hoefling*, 811 F.3d at 1277; *see id.* at 1277–78 (holding that "when a plaintiff amends its original complaint to make clear 'it had rejected' a certain contract provision, it will not be bound by the terms of the contract simply because it had attached the contract to the original complaint" (quoting *Dresdner Bank AG v. M/V Olympia Voyager*, 463 F.3d 1210, 1215 (11th Cir. 2006))).

As we explained above, HCM's amended complaint need not recite particular magic words to disavow statements made in the MRTPA. By including specific allegations that contradict that document and expressly removing all citations to that document, HCM's amended complaint "expressly disavow[s] or reject[s] as untrue" Philip Morris's claim that the IQOS system does not combust. *Id.* at 1277. In other words, even if the MRTPA was "central" to HCM's allegations, HCM can—and did—expressly disavow or reject as untrue the relevant portions of the MRTPA.

We also note that the statements in the MRTPA cannot be used to arrive at a definitive determination on infringement because the patent might require a different meaning of "combustion" than the MRTPA. The MRTPA—rather narrowly—defines a "combustion process" as "burning and the formation of smoke with solid particles and high levels of [harmful and potentially harmful constituents]." J.A. 165; *see* J.A. 136. HCM contends, however, that the proper construction of "combustion" in the '170 patent requires only "a chemical reaction that requires fuel, oxygen and an ignition source." J.A. 675 (defining "combustion reaction"). The district court did not conduct a *Markman* hearing or seek briefing on the meaning of this key claim term, or engage in claim construction, to resolve the facial conflict between these two constructions. It is possible that, after conducting a *Markman* hearing and receiving briefing on the issue, the district court will construe this phrase and thereafter resolve the infringement issue on summary judgment. But it would be premature for the

district court to do so based solely on the complaint at the Rule 12(b)(6) stage.

In view of the specific infringement allegations which disavow any contradictory statements in the MRTPA, we determine that HCM's amended complaint, like its original complaint, stated a valid claim for patent infringement notwithstanding consideration of the MRTPA exhibit. Because we reverse the district court's dismissal of HCM's complaint, we also vacate the court's award of attorneys' fees. *See Chang v. JPMorgan Chase Bank, N.A.*, 845 F.3d 1087, 1099 (11th Cir. 2017) (vacating district court's award of attorneys' fees after reversing judgment); *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1319 (Fed. Cir. 2019) (vacating district court's award of attorneys' fees under 35 U.S.C. § 285 after vacating district court's dismissal of complaints).

## III

Finally, we consider HCM's request for reassignment to a different district court judge on remand. Because reassignment is not an issue unique to patent law, we follow regional circuit law. *Eolas Techs., Inc. v. Microsoft Corp.*, 457 F.3d 1279, 1282 (Fed. Cir. 2006). The Eleventh Circuit considers three factors when deciding whether to reassign a case on remand: "(1) whether the original judge would have difficulty putting his previous views and findings aside; (2) whether reassignment is appropriate to preserve the appearance of justice; [and] (3) whether reassignment would entail waste and duplication out of proportion to the gains realized from reassignment." *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1373 (11th Cir. 1997).

HCM alleges that reassignment is warranted. HCM contends that the first two factors—whether the district judge would have difficulty putting aside his previous views and whether the appearance of justice would be preserved—are satisfied because the district judge deemed HCM's claims "baseless" and reflected a "studied

ignorance," found the case to be exceptional, and awarded fees to Philip Morris. Appeal No. 22-1563 Appellant's Br. 24–27 (citing *Healthier Choices Mgmt. Corp. v. Philip Morris USA, Inc.*, No. 20-cv-4816, 2022 WL 870206, at \*2–3 (N.D. Ga. Feb. 22, 2022)). HCM also argues there would be no waste or duplication because the case only reached the pleadings stage and discovery was stayed. *Id.* at 27–28.

Philip Morris responds that none of the factors weigh in favor of reassignment and thus HCM has not demonstrated that reassignment is warranted. Appeal No. 22-1563 Appellees' Br. 29–36. Philip Morris contends that the district judge's strongly worded opinions ruling against HCM do not show that the district judge would have difficulty putting aside his previous views or that the appearance of justice would not be preserved. *Id.* at 30–35. Regarding waste and duplication, Philip Morris argues that the district judge spent nearly a year and a half becoming familiar with the case and technology and resolved ten different motions. *Id.* at 35–36.

We agree with Philip Morris. As the Eleventh Circuit has held, "the fact that the district judge ruled against the appellants previously is of little impact; otherwise, every reversed case would have to be reassigned on remand." *Stargel v. SunTrust Banks, Inc.*, 791 F.3d 1309, 1312 (11th Cir. 2015). Similarly, the Eleventh Circuit has made clear that a district court's award of attorneys' fees does not support reassignment. *AcryliCon USA, LLC v. Silikal GMBH & Co.*, 46 F.4th 1317, 1331 (11th Cir. 2022). That the district judge had previously ruled adversely against HCM does not warrant the "severe remedy" of reassignment here. *Comparelli v. Republica Bolivariana De Venezuela*, 891 F.3d 1311, 1328 (11th Cir. 2018). Accordingly, we deny HCM's request for reassignment on remand.

## CONCLUSION

For the above reasons, we reverse the district court's dismissal of HCM's original complaint and its denial of

HEALTHIER CHOICES MANAGEMENT CORP. v.                    19
 PHILIP MORRIS USA, INC.

HCM's motion for leave to amend its complaint. Accordingly, we vacate the award of attorneys' fees. We remand the case to the district court for further proceedings consistent with this opinion.

## REVERSED AND REMANDED

### COSTS

No costs.